**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARLOS L. RÍOS-PELLOT,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CIVIL NO.: 25-1022 (MEL) |

**OPINION AND ORDER**

## I. PROCEDURAL AND FACTUAL BACKGROUND

Pending before the Court is Carlos L. Ríos-Pellot's ("Plaintiff") petition for judicial review of the Commissioner of Social Security's (the "Commissioner") denial of his application for disability benefits under the Social Security Act. ECF No. 19. On December 16, 2020, Plaintiff filed an application for Social Security benefits, alleging he became unable to work due to disability on March 1, 2018 ("the onset date"). Tr. 816-817, 831, 833. Prior to the onset date, Plaintiff had no past relevant work. Tr. 120, 144-145. Plaintiff had met the insured status requirements of the Social Security Act through March 31, 2023, the date last insured. Tr. 110-111, 816. Plaintiff's disability claim was initially denied on March 25, 2021, and subsequently denied upon reconsideration on December 17, 2021. Tr. 150-153, 156-159.

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 160. The hearing was held telephonically on July 25, 2023, before ALJ Juan Milanés and Plaintiff appeared represented by counsel. Tr. 133-149. The ALJ subsequently issued his decision on August 14, 2023, finding that Plaintiff was not disabled as defined in the Social Security Act during the relevant period, that is, from the onset date through the date last insured. Tr. 110-121. Upon

Plaintiff's request for review of the ALJ's decision on September 19, 2023, an Appeals Council ("AC") affirmed the ALJ's denial of disability benefits on November 8, 2024, thereby rendering the ALJ's decision the final decision of the Commissioner and subject to judicial review. Tr. 1-6. Plaintiff filed the present complaint before the Court on January 13, 2025, and subsequently filed his brief, wherein he challenges the ALJ's decision on June 11, 2025. ECF No. 2, 19. The Commissioner opposed Plaintiff's brief on July 16, 2025. ECF No. 22.

## II. Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg*

*v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt.*

*Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii) ("the listings"). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines

that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

## III. THE ALJ'S DECISION

In his decision dated August 14, 2023, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act until March 31, 2023. Tr. 112. At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of March 1, 2018 through his date last insured of March 31, 2023. Tr. 112. At step two of the sequential evaluation process, the ALJ determined Plaintiff had various severe impairments, namely: lumbar degenerative disc disease, chronic fatigue syndrome, left cubital syndrome, and depression. Tr. 113. The ALJ also noted Plaintiff suffered from "Hodgkin's lymphoma status post left side neck nodule removal," but classified it as a non-severe impairment. Tr. 113. At step three of the sequential evaluation process, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 113. The ALJ then proceeded to determine that Plaintiff had the following RFC during the relevant period:

> [C]laimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant can frequently climb ropes, ladders, scaffolds, ramps, and stairs, stoop, balance, kneel, crouch and crawl. He can occasionally reach overhead with his left arm. He can frequently reach forward and to the side with left arm. The claimant can frequently handle and finger with left hand. He is limited to simple tasks; in a low stress work environment, which is defined as involving only simple work-related decisions, having no problem solving tasks, and with few (defined as 3 or less), if any workplace changes in routine. He can occasionally perform jobs that require a strictly enforced production pace, such as conveyor belt jobs or jobs with specific hourly quotas. He can frequently interact with coworkers and supervisors, but occasionally interact with the public.

Tr. 115. At step four of the sequential evaluation process, the ALJ determined that Plaintiff had no past relevant work, and therefore, proceeded to step five. Tr. 120. At step five of the sequential

evaluation process, the ALJ presented a vocational expert ("VE") with a hypothetical scenario involving an individual with Plaintiff's age, education, work experience, and RFC. Tr. 120. The VE testified that an individual with similar circumstances and a similar RFC would be able to perform occupations such as marker, checker, and router. Tr. 120-121. Having found that there was work in significant numbers in the national economy that Plaintiff could perform, the ALJ concluded that Plaintiff was not disabled. Tr. 121.

## IV. LEGAL ANALYSIS

Plaintiff presents three alleged errors in the ALJ's decision. ECF No. 19 at 14-28. First, Plaintiff argues that the ALJ erred in his step three finding that Plaintiff's mental impairments did not meet a medical listing. Second, Plaintiff claims the ALJ's RFC assessment was deficient because he failed to follow the psychiatric review technique (PRT) and properly account for Plaintiff's mental impairments. Third, Plaintiff questions the ALJ's RFC assessment because he did not properly consider the severity of Plaintiff's physical impairments. The Court will discuss each contention in turn.

### A. The ALJ's Step Three Determination

At step three of the sequential evaluation process, the ALJ found that lumbar degenerative disc disease, chronic fatigue syndrome, left cubital syndrome, and depression all constituted severe impairments Plaintiff suffered from. Tr. 113. The ALJ then determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1." Tr. 113.

Plaintiff challenges this step three determination, claiming that the ALJ's exclusive reliance on "two misinterpreted or misunderstood function reports" caused him to incorrectly determine Plaintiff's mental impairments did not meet medical listing 12.04. ECF No. 19 at 14. In

particular, he argues the ALJ made findings inconsistent with the information contained in the function reports. *Id*. at 21-22. Plaintiff also posits that the ALJ's "overreliance" on these function reports is "contrary to case law". *Id.* at 22. In particular, the argument goes, the ALJ ignored the consultative examiner ("CE") Dr. José Ríos' reports and findings when considering whether Plaintiff's mental impairments met listing 12.04 (Depressive, bipolar, and related disorders) in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step three of the sequential evaluation process, "the medical severity of the claimant's impairments is considered under specific criteria." *Pennell v. Colvin*, 52 F.Supp.3d 138, 144 (D. Mass. Sept. 25, 2014) (citing 20 C.F.R. § 404.1520(a)(4)(iii)). This step requires a plaintiff to "show that he has an impairment or a combination of impairments that meets or equals" one of the impairments in the listings. *Torres v. Secretary of Health and Human Serv.*, 870 F.2d 742, 745 (1st Cir. 1989) (citing *Dudley v. Secretary of Health and Human Serv.*, 816 F.2d 792, 793 (1st Cir. 1987)). In analyzing whether a plaintiff's mental impairments meet or medically equal listings such as 12.04 (depressive, bipolar and related disorders), the ALJ must rate a plaintiff's mental functional limitations by analyzing the four areas of mental functioning that the plaintiff would use in a work setting (the "paragraph B criteria"). These are: (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself." 20 C.F.R. Part 404, Subpart P, Appendix 1. A plaintiff must show that he experiences either an extreme limitation in one or a marked limitation in two of these areas, in order to satisfy the paragraph B criteria. *Id*. If a plaintiff fails to show that his impairment or combination of impairments meets or medically equals a listed impairment, the ALJ will then proceed to "assess and make a finding about [plaintiff's RFC] based on all the relevant medical and other evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1520(e).

As already stated, the ALJ determined at step three that "[t]he record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal a listed impairment." Tr. 113. After analyzing that Plaintiff did not meet the applicable physical impairment listings— that is, listings 1.15, 1.16, and 1.18—the ALJ then found that "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination do not meet or medically equal the criteria of listing 12.04," and detailed his analysis of the paragraph B criteria in this regard. Tr. 113-114. Going through each of the four areas of functioning, the ALJ explained his reasoning as follows:

> In understanding, remembering, or applying information, the claimant had moderate limitations. The claimant asserted in his Function Reports Adult, that is able to take care of his personal care, he did not require reminders to take care of his personal hygiene or in order to take his medication. He stated that he was able to prepare meals and perform house work. Furthermore, he is able to drive car, shops online, manages his finances, watches television, and does wood work (Exs. 3E; 8E).
>
> In interacting with others, the claimant had mild limitations. The claimant asserted in his Function Reports Adult, that he has no difficulty getting along with family, friends, neighbors, people in authority, and others. Furthermore, he indicated that he has never been fired or suspended due to problems with other people. (Exs. 3E; 8E).
>
> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant had moderate limitations. The claimant stated in his Function Reports Adult that he listens to music, watches television, he is able to follow written and oral instructions, maintain attention, and he finishes what he begins. (Exs. 3E; 8E).
>
> Finally, the claimant had moderate limitations in his ability to adapt or manage oneself. The claimant reported having difficulties managing stress and routine changes. He indicated that he deals with this listening to music, watching television, and breathing. However, he is able to drive a car independently, go to doctor's appointments, performs house work, takes care of his personal care, his hygiene,

> and medication. Furthermore, he is able to manage his finances and shops using the telephone (Exs. 3E; 8E).
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

Tr. 113-114.

**1. Whether the ALJ's paragraph B criteria analysis contradicts the content of Plaintiff's function reports.**

Plaintiff states that both function reports that the ALJ relies on "in many cases express the exact opposite of what the ALJ concluded in [his] decision." ECF No. 19 at 21. Not so. A review of the two function reports that the ALJ relies on disproves Plaintiff's argument in this regard. For example, Plaintiff's admissions in these function reports state that during the relevant period he was able to prepare meals such as "sandwich[es], cereal, tuna, and reheat meals", he could do tasks such as "wash the dishes, sweep [his] bedroom, [and] load [his] clothes into the washer," he could "drive short distances at low speed," he could shop by phone for items like "bread, vegetables, eggs, [and] cheese," he was able to manage money by counting his change, he could read and watches TV daily, he spent time with his parents and with friends various times a week and visited his aunt once a month, he did not have problems getting along with others, he handled stress by breathing, watching TV or listening to music, among other activities. Tr. 172-179, 188-195. The fact that the function reports also include the limitations that Plaintiff mentions in his brief does not negate the fact that the ALJ's findings during his paragraph B analysis can be derived from both reports and are therefore, supported by substantial evidence.

Plaintiff also points out that the ALJ erred in including woodwork as an activity he is still able to do, a fact that is directly contradicted in both function reports. ECF No. 19 at 20-21. While Plaintiff is correct in this assertion, it amounts to nothing more than harmless error as woodwork was just one in the list of other activities the ALJ listed Plaintiff was still able to do when making

his paragraph B criteria analysis. *See Ward v. Commissioner of Social Security*, 211 F.3d 652, 656 (1st Cir. 2000) (citing *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir. 1986); *Dantran, Inc. v. United States Dep't of Labor*, 171 F.3d 58, 73 (1st Cir. 1999); *School v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("While an error of law by the ALJ may necessitate a remand . . ., a remand is not essential if it will amount to no more than an empty exercise."). Thus, Plaintiff's argument in this regard necessarily fails, as the ALJ's findings are supported by substantial evidence.

Plaintiff adds that the ALJ's statement that Plaintiff "indicated that he has never been fired or suspended due to problems with other people" is disingenuous because the ALJ had already found Plaintiff had no relevant work experience. ECF No. 19 at 22. Even if the Court were to discount this part of the ALJ's analysis, his determination regarding Plaintiff's ability to interact with others is still supported by substantial evidence as both function reports cited by the ALJ support his finding that Plaintiff had no trouble getting along with others. Tr. 114, 177-178, 193-194.

**2. Whether the ALJ's reliance on the function reports is contrary to law.**

Plaintiff proffers that the ALJ's overreliance on the function reports to determine mental functioning is contrary to law. ECF No. 19 at 22. Citing various out of circuit cases, Plaintiff asserts the daily activities that appear in the function reports should not be construed as Plaintiff's ability to sustain a full-time job. *Id*. at 23-23. This argument holds no water. As the Commissioner points out in his brief, the step three analysis considers whether a plaintiff's impairments are severe enough to prevent him from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). Moreover, the ALJ is allowed to reasonably infer a plaintiff's ability to work from a plaintiff's daily activities. *See Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir.

2018) (finding that it was not unreasonable for the ALJ to infer that the plaintiff could perform light work from the plaintiff's daily activities such as performing household chores, caring for a dog, shopping for groceries, etc.); *Lianabel G.N. v. Commissioner of Social Security*, Civil No. 24-1016 (GLS), 2025 WL 957732, at *3 (D.P.R. March 31, 2025) ("[G]iven that Social Security claimants are, by definition, not working when they apply for disability benefits, an ALJ must necessarily infer whether a claimant possesses the ability to work from circumstantial evidence, including the claimant's daily activities.") (citing *Coskery*, 892 F.3d at 7). Plaintiff's argument to this effect therefore also fails.

**3. Whether the ALJ did not consider Dr. Ríos' evidence during his step three analysis.**

Plaintiff's last allegation regarding the ALJ's step three analysis is that by relying solely on Plaintiff's function reports, the ALJ ignored Dr. Ríos' report and findings. The Social Security Administration has stated that their "mental disorders listings are function-driven, not diagnosis-driven." 81 Fed. Reg. 66138-01, 2016 WL 5341732, at *66150, 66155 (Sept. 26, 2016). More notably, Plaintiff's argument is belied by the fact that the ALJ specifically addressed Dr. Ríos' findings when considering Plaintiff's RFC. Tr. 118-119. This being the case, the mere fact that it was not addressed previously is insufficient in and of itself to warrant remand. *See West v. Berryhill*, 2017 WL 6499834, at *1 (1st Cir. Dec. 11, 2017) ("[t]he court considers the ALJ's decision as a whole when determining whether substantial evidence supported the ALJ's findings.") (citation omitted); *Ríos v. Colvin*, Civil Action No. 3:15-cv-30190-KAR, 2016 WL 7468802, at *12 (D. Mass. Dec. 28, 2016) (finding remand was not warranted because "there exists substantial evidence in the (ALJ's) decision as a whole for the step three determination. . . .") (citing *Fiske v. Astrue*, 2012 WL 1065480, at *9 (D. Mass March 27, 2012)).

### B. The ALJ's Mental RFC Determination

The ALJ, in considering the paragraph B criteria, found Plaintiff had moderate limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself. . . ." Tr. 114, 119. He also found that Plaintiff had "mild limitations in interacting with others. . . .". *Id*. The ALJ reviewed Plaintiff's medical record and found that greater restrictions were not supported. *Id*. The ALJ then determined that Plaintiff had the RFC to perform light work, adding the following:

> [L]imited him to simple tasks; in a low stress work environment, which is defined as involving only simple work-related decisions, having no problem solving tasks, and with few (defined as 3 or less), if any, workplace changes in routine. He can occasionally perform jobs that require strictly enforced production pace, such as conveyor belt jobs or jobs with specific hourly quotas. He can frequently interact with coworkers and supervisors, but occasionally interact with the public.

Tr. 115. The ALJ arrived at this mental RFC determination after considering Plaintiff's symptoms, as well as the objective medical evidence, and finding that "the overall record simply does not contain evidence consistent with the extensive degree of reduced functioning alleged by the claimant." Tr. 116.

Plaintiff claims that the ALJ did not follow the PRT at step three of the sequential evaluation process. ECF No. 19 at 24. The PRT is used at steps two and three of the sequential evaluation process in order to evaluate if a plaintiff has a medically determinable impairment. 20 C.F.R. § 404.1520a. Once a plaintiff is found to have a medically determinable impairment, the PRT is used to "rate the degree of functional limitation resulting from the impairment." 20 C.F.R. § 4041520a(b)(1)&(2). The ALJ must then classify each of the paragraph B criteria in one of five categories (none, mild, moderate, marked, or extreme) and document the application of the PRT in his decision. 20 C.F.R.§404-1520a(c)-(e). In documenting his analysis of the paragraph B criteria, the ALJ cited to Plaintiff's function reports which form part of the record. Tr. 114. The

ALJ detailed the activities Plaintiff was still able to do for each of the areas of mental functioning and classified each of these accordingly. *Id*. The ALJ then arrived at the conclusion that Plaintiff's mental impairments "did not cause at least two 'marked' limitations or one 'extreme' limitation." Tr. 114. Therefore, Plaintiff's argument that the ALJ did not use the PRT during step three of the sequential evaluation process falls short.

Plaintiff also states that the ALJ did not follow the PRT in the subsequent steps of the sequential evaluation process. To this end, Plaintiff contends that despite finding Plaintiff had moderate limitations in three and mild limitations in one of the four paragraph B criteria, the ALJ imposed more significant restrictions for the area he categorized as mild than he did for the areas of mental functioning he categorized as moderate. ECF No. 19 at 24-25. However, Plaintiff does not elaborate how his limitations would constitute at least two marked limitations or one extreme limitation in any of the paragraph B criteria. Since Plaintiff fails to explain this point in more detail, this argument is waived. *United States v. Zannino*, 895 F.2d 1, 7 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Plaintiff further contends that the RFC determination was not supported by Dr. Ríos' findings and that the ALJ failed to give enough weight to treating clinical psychologist Dr. María de los Ángeles De Jesús' progress notes. ECF No. 19 at 25. These arguments do not pass muster.

Plaintiff was evaluated by Dr. Ríos on October 19, 2021, at which time Plaintiff stated he was not receiving psychiatric nor psychological treatment. Tr. 118, 1836-37. As Plaintiff mentions, Dr. Ríos found that Plaintiff presented "marked psychomotor retardation, blunted affect, poor self-attitude, minimally productive speech, depressed mood, and a diagnosis of major depressive disorder with a recommendation to begin urgent psychiatric treatment." ECF No. 19 at 25 (citing

Tr. 1836-1837). Considering the report as a whole, however, the ALJ not only included these findings in his decision, but also included Dr. Ríos' findings that Plaintiff was adequately groomed, that his vocabulary was adequate, that his form of thought was logical, linear, and coherent, that he had no suicidal or homicidal ideations, that there was no evidence of hallucinations, delusions, obsessions, compulsions, or phobias, and that Plaintiff's intelligence was average. Tr. 118 (citing Tr. 1836-1837). The ALJ determined that Dr. Ríos' findings were "somewhat persuasive,", and explicitly stated that they were incorporated in assessing Plaintiff's RFC. *Id.* The ALJ also noted that Dr. Ríos' findings were found to be useful when determining the severity of Plaintiff's depression diagnosis, but that the limitations were "not profoundly limiting," as Plaintiff alleged. *Id*.

Plaintiff was also evaluated by Dr. De Jesús on May 24, 2023. Tr. 793-795. In her progress notes of the same date, Dr. De Jesús describes Plaintiff as being "sad and in low spirits, worries about violence, depressed mood, changes in sleep pattern, neuropathy, [and] lack of energy." Tr. 795. However, the progress notes also state Plaintiff was responsible with his appointments, oriented in person, place, and time, had normal posture, appropriate behavior, looked his age, had appropriate clothing, maintained visual contact, and was spontaneous. Tr. 793. She noted Plaintiff's mood and affect was depressive, but that Plaintiff appeared attentive and spoke with an audible tone of voice. *Id*. Like Dr. Ríos, Dr. De Jesús diagnosed Plaintiff with major depression, among other conditions, but noted he was using medications such as Zoloft, Remeron, and Ritalin. Tr. 795. She also noted that Plaintiff had an appointment to see his psychiatrist, Dr. Francisco Parra, in June 2023 and stated her prognosis as guarded. *Id*. The ALJ notes having considered Dr. De Jesús' findings in his decision. Tr. 118 (citing 792-795). Though the ALJ was not required to consider this evidence, as it is outside of the relevant period, he was not wrong in doing so. *See*

*Rodrigues v. Bisignano*, 24-cv-11975-DJC, 2025 WL 1927625, at *5 (D. Mass. 2016) ("When the evidence lacks precision and focus in light of the narrow relevant time period, an ALJ may use evidence from surrounding time periods to draw conclusions regarding the relevant time period. . . There is, however, no legal authority requiring [the] same.") (citations and quotations omitted).

After discussing both Dr. Ríos and Dr. De Jesús' findings, the ALJ determined that the medical evidence supported the moderate and mild limitations described above and considered these limitations when making his mental RFC assessment. Tr. 119. He then stated that "[t]he longitudinal record does not support greater mental restrictions." *Id*. Contrary to Plaintiff's assertions, a review of Dr. Ríos' report shows that it does support the ALJ's findings. Moreover, a review of Dr. De Jesús' progress notes also shows that the ALJ properly considered them in his decision. Plaintiff has pointed to nothing on the record that shows the findings of these two mental health professionals are incompatible with the restrictions imposed by the ALJ in his mental RFC assessment, nor has Plaintiff explained how he warrants greater restrictions. The fact that both mental health professionals diagnosed Plaintiff with major depressive disorder is inapposite, as "mental disorders listings are function-driven, not diagnosis-driven." 2016 WL 5341732, at *66150, 66155; *see also Olmeda v. Astrue*, 16 F.Supp.3d 23 (D.P.R. 2014) (affirming Commissioner's final decision, where the ALJ found that a plaintiff diagnosed with severe major depression had an RFC to perform light work "except for work involving skilled and semiskilled functions, limited to avoiding environmental hazards and not dealing with the public."). This being the case, Plaintiff's arguments cannot prosper.

### C. The ALJ's Physical and Combined RFC Determination

The third error Plaintiff brings forward is twofold. He first states that "[t]he ALJ's RFC assessment is deficient as a matter of law as it did not sufficiently account for the severity of plaintiff's physical impairments." ECF No. 19 at 26. Plaintiff provides various reasons for this

challenge. For example, Plaintiff argues that the ALJ did not properly consider "the residual functional effects of cancer treatment" in his RFC determination. *Id*. at 27. He also argues that the ALJ improperly considered the severity of his chronic fatigue syndrome because he failed to include restrictions to accommodate for these symptoms. *Id*. As for the ALJ's combined RFC determination, Plaintiff asserts that the ALJ failed to properly consider Plaintiff's physical and psychological impairments when making this assessment, as well as to include stricter limitations to account for these impairments. ECF No. 19 at 26-28. In Plaintiff's view, these failures make the ALJ's RFC assessment deficient as a matter of law.

Regarding Plaintiff's challenge to the ALJ's physical RFC assessment, the ALJ's decision discusses the myriad examinations and treatments that Plaintiff underwent, including the evaluation made by CE Dr. Luis J. Rivera, M.D. Tr. 117-118. As the Commissioner points out, Dr. Rivera's report and findings—which the ALJ cites to—mentions that Plaintiff suffered from chronic fatigue syndrome and mentions the symptoms Plaintiff experienced post chemotherapy treatment. Tr. 117 (citing Tr. 1565-1572). However, the ALJ determined that other record evidence belied the level of severity Plaintiff alleged his limitations produced. To this end, the ALJ relied on Dr. Rivera's own finding that Plaintiff "could walk without an assistive device, sit, and stand without difficulties." Tr. 117 (citing Tr. 1567). The ALJ also mentioned that Plaintiff's treating oncologist Dr. Rafael Pérez's progress notes remarking that during treatment Plaintiff "was '[f]ully active, able to carry on all pre-disease performance without restriction. . .'" as well as the fact that Plaintiff was "[r]estricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g. light housework, officer work." Tr. 118 (citing Tr. 305-368). Even then, the ALJ imposed stricter limitations in his RFC determination "to address the combined effect of the claimant's physical impairments." Tr. 118. Thus, the ALJ did properly

consider Plaintiff's chronic fatigue syndrome as well as his symptoms post chemotherapy treatment. However, the ALJ found it did not cause the profound limitations Plaintiff alleged and this determination finds substantial support in the record evidence. Thus, ALJ's physical RFC determination is supported by substantial evidence.

To the extent Plaintiff reiterates that the ALJ over-relied on the function reports when analyzing Plaintiff's RFC, this argument once again fails. The ALJ's description of Plaintiff's admissions in the two function reports, save for the comment on Plaintiff's ability to conduct woodwork, are faithful representations of said function reports, and therefore, supported by substantial evidence. *See* Tr. 172-179, 188-195.

Plaintiff's assertion that the ALJ failed to adequately evaluate the combined functional impact of Plaintiff's impairments also fails. The ALJ determined that Plaintiff had the physical RFC to conduct light work after considering the record as a whole, with certain caveats: Plaintiff "can frequently climb ropes, ladders, scaffolds, ramps, and stairs, stoop, balance, kneel, crouch and crawl. He can occasionally reach overhead with his left arm. He can frequently reach forward and to the side with left arm. [Plaintiff] can frequently handle and finger with left hand." Tr. 115. In making this assessment, the ALJ cites to various sources from Plaintiff's medical record, including the two function reports, treatment received at the Atlantic Medical Center, a lumbosacral Magnetic Resonance Imaging (MRI) Plaintiff underwent on July 6, 2020, an imaging report from May 26, 2022, progress notes from treatment under the care of Plaintiff's treating physiatrist, Dr. Kathya Ramos, the evaluation performed by Dr. Rivera, progress notes from Plaintiff's treating oncologist Dr. Pérez, and the state agency's physiological consultants. Tr. 115-119; *see also* Tr. 224-230, 305-368, 369-525, 557-683, 816-830, 845-852, 1557-1558, 1565-1572, 1573-1598, 1821-1835, 1839-1841. The ALJ detailed these sources in his analysis, and even noted

Dr. Rivera's comment that Plaintiff "should avoid excessive pulling, pushing, bending, straining, or heavy lifting and repetitive or sustained use of both hands." Tr. 117. Regarding the state agency physiological consultants, though the ALJ found their opinions persuasive, he also found that Plaintiff required a "higher degree of postural limitations and manipulative limitations" than those determined by them. Tr. 119. He included those stricter limitations in the RFC. The ALJ then explained that, though the Plaintiff may experience limitations due to both his physical and his mental impairments, those limitations are not "incompatible with the performance of some work activity." Tr. 119. Referencing the objective evidence in Plaintiff's medical record as well as Plaintiff's testimony and reports, the ALJ noted that Plaintiff's impairments, both physical and mental, are consistent with his RFC determination. *Id*. Viewing the ALJ's analysis holistically, it is evident that the ALJ properly considered the record and determined that Plaintiff's symptoms did not rise to the level of severity he alleged. The fact that Plaintiff understands a different conclusion was warranted does not mean that the ALJ's conclusion is erroneous. "This Court must affirm the Commissioner's decision 'even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.'" *Berríos-Vélez v. Barnhart*, 402 F.Supp.2d 386, 391 (D.P.R. 2005) (quoting *Rodríguez-Pagán v. Sec'y of Health and Human Services*, 819 F.2d 1, 3 (1st Cir. 1987); *Coggon v. Barnhart*, 354 F.Supp.2d 40 (D. Mass. 2005)). Plaintiff's final argument that the VE's opinion was flawed relies on its argument that the ALJ's RFC assessment was deficient. This not being the case, Plaintiff's argument that the VE's opinion was flawed also fails.

## V. CONCLUSION

Based on the foregoing analysis, the Court concludes that the decision of the Commissioner that Plaintiff is not entitled to disability benefits is supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of August, 2026.

s/Marcos E. López
U.S. Magistrate Judge